UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,                        Case No. 1:22-cr-52

v.                                           Hon. Jane M. Beckering
                                             United States District Judge

ROBERT DUANE WICKE,

        Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes the defendant, Robert Duane Wicke, by his counsel, James Stevenson Fisher, Assistant Federal Public Defender, and submits this Sentencing Memorandum in support of the minimum lawful sentence this Honorable Court is willing to impose.  Mr. Wicke recognizes the serious nature of his offense conduct and relevant conduct, and the lengthy sentence imposed under the sentencing guidelines.  Nonetheless, a substantially lower sentence than recommended by probation, at or near the minimum authorized by law, would achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

I.       **Introduction**

This Honorable Court will sentence Mr. Wicke on September 12, 2022.  The final Presentence Investigation Report ("PSR") places Mr. Wicke's recommended sentencing guidelines for count three at life, based on a total offense level of 43 and criminal history category II.  The sentence authorized by law is at least 10 years of imprisonment, up to life.

His guidelines for counts four through seven is 240 months as it is the statutorily authorized maximum sentence.  The sentence authorized by law for these counts is at least five years of imprisonment up to twenty years.

Mr. Wicke has four outstanding objections to the PSR.  These objections are material, in that they affect the sentencing guidelines applicable to him and the Court is required to accurately calculate the sentencing guidelines prior to the pronouncement of his sentence.  However, regardless of the disposition of these sentencing guideline objections, it is virtually certain that Mr. Wicke will serve the rest of his life in prison.  He is a 60-year-old cancer survivor.  The lowest sentence this Court can impose – 10 years imprisonment, would result in his theoretical release after his 68th birthday.  Given both the extremely high nature of his sentencing guidelines and his poor health and history of cancer, it seems highly unlikely that Mr. Wicke will ever be free.

In this respect, these various objections are in effect immaterial.  Nonetheless Mr. Wicke must raise these objections or waive them.  His primary reason for lodging the remaining objections is that most of the objectionable guidelines simply do not facially apply to the offense conduct here.  Additionally, despite the general offense conduct at issue being a relatively common internet sting operation across the nation,[1] the remaining objections do not appear to be the subject of any binding precedent.  The government can cite to little precedent within our circuit or at the Supreme Court in favor of its position.  (See ECF No.

---

[1] See e.g. *Officers accused of bending rules on sex sting arrests*, https://www.usatoday.com/story/news/nation/2014/08/08/sexual-predator-stings/13770553/ (last visited 9/5/2022) noting that by 2014 more than 1,200 men in Florida alone were arrested under similar "internet sex stings" as employed here.

39, PageID.203, Government Sentencing Memorandum, which cites the D.C. Circuit Court, the 11th Circuit Court, and misapplies Sixth Circuit precedent to these facts). Given the plain text of the guidelines provisions at issue and lack of binding authority, failing to lodge these objections would be potentially ineffective representation of Mr. Wicke's interests. But it should not be lost on anyone that these objections are likely immaterial to the outcome of this case- which is likely a de facto life sentence regardless of the Court's determination of these legal issues.

## II.   Legal Discussion

Under *United States v. Booker*, 543 U.S. 220 (2005), this Court shall consider several factors when determining a defendant's sentence. After correctly calculating the advisory guidelines sentence range, and "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). As explained in *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), 18 U.S.C. § 3553(a) contains an overarching instruction to impose a sentence sufficient, but not greater than necessary to accomplish the sentencing goals set forth in § 3553(a).

### (a)   Outstanding Legal Objections

At sentencing, the government bears the burden of proving that the enhancement applies by a preponderance of the evidence. *United States v. Mukes*, 980 F.3d 526, 533 (6th Cir. 2020).

3

**(1)** U.S.S.G. § 2G2.2(b)(3)(E) - If the offense involved distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, increase by 7 levels.

This enhancement on its face applies to circumstances where a defendant distributes material involving the sexual exploitation of a minor "*to a minor . . .* intend[ing] to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct." Mr. Wicke did not distribute material involving the sexual exploitation of a minor "to a minor." He distributed the material to a fictitious adult who expressed willingness to share the materials with fictitious minors. It was not sent to any minor to "groom" them for prohibited sexual conduct, see *United States v. Dorvee*, 616 F.3d 174, 180 (2d Cir. 2010), conduct that some districts have described as a "more heinous variations of distribution." *United States v. Cubero*, 754 F.3d 888, 894 (11th Cir. 2014), fn. 5. The reason for imposing such an enhancement is obvious – people who send material involving the sexual exploitation of a minor "to a minor" with the express intent of facilitating the further illegal conduct or production of such materials, deserve more serious sanctions than those who send them to adults.

Even assuming for the sake of argument that it is appropriate to apply this *significant* enhancement to a fictitious minor, the enhancement does not apply here, where the distribution was not "to a minor," fictitious or otherwise. The situation here is not analogous to that in *United States v. Quinn*, 257 F. App'x 864, 868 (6th Cir. 2007) or *United States v. Sheridan*, 304 F. App'x 742 (10th Cir. 2008), where the courts applied the enhancement to situations where the recipient of the images was a law enforcement officer portraying themselves as a fictitious minor. The intended recipient of the images here was the fictitious

mother.  Even assuming the messages evidenced an intent and desire to groom these minors,

an issue not in dispute, the distribution was to a fictitious adult, who Mr. Wicke believed to

be engaging in the grooming of these fictitious children.  Mr. Wicke himself had no direct

contact whatsoever with these fictitious minors.

Turning to the guideline and the clearly applicable definitions, the conduct in evidence

does not support this enhancement.  The application note defines "distribution to a minor,"

the conduct probation and the government alleges occurred here, as "the knowing distribution

to an individual who is a minor at the time of the offense."  U.S.S.G. § 2G2.2, Application

Note 1.  However, as the government notes, the application note defining "minor" expands

this definition to include

> (A) an individual who had not attained the age of 18 years; (B) an individual,
> whether fictitious or not, who a law enforcement officer represented to a
> participant (i) had not attained the age of 18 years, and (ii) could be provided
> for the purposes of engaging in sexually explicit conduct; or (C) an
> undercover law enforcement officer who represented to a participant that the
> officer had not attained the age of 18 years.

Mr. Wicke argues that the application note for "minor" improperly expands the definition of

the term beyond its plain meaning in violation of *United States v. Havis*, 927 F.3d 382, 385

(6th Cir. 2019),[2] and that these two definition sections are contradictory.

As the Sixth Circuit has noted, "[w[here there is no clear intention otherwise, a specific

statute will not be controlled or nullified by a general one." *United States v. Hunter*, 12 F.4th

555, 567 (6th Cir. 2021), cert. denied, 142 S. Ct. 2771 (2022), quoting *Morton v. Mancari*,

417 U.S. 535, 550-51 (1974).  "[T]he specific provision is construed as an exception to the

---

[2] *Havis* arose well after the D.C. Circuit's decision in *United States v. Love*, 593 F.3d 1 (D.C. Cir. 2010), cited by the
government in support.  (ECF No 39, PageID.206).  Nor does the D.C. Circuit appear to take as skeptical a view of the
application notes as in our Circuit.

general one." *Id*. The guideline definition for "distribution to a minor" is an express definition dealing with this particular circumstance and clearly states that it requires the "*knowing distribution to an individual who is a minor* at the time of the offense." This specific provision dealing with distribution of material involving the sexual exploitation of a minor should control over the general definition provided for "minor," which is applicable to a variety of contexts covered by the guidelines. The definitions, when applied here, clearly conflict: distribution to a minor requires knowing distribution to a person who "is a minor." The general "minor" term does not require the person "is a minor."

Here, the only plausible mechanism for applying this enhancement is by reading application note 1's secondary definition of "minor;" "(B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct," to apply to the "distribution to a minor" definition. But this is not a sustainable reading of the expressly applicable definition of "distribution to a minor" or the plain meaning of the guideline itself. The undercover law enforcement officer did not represent that they were a minor, but merely had access to (fictitious) minors who they expressed willingness to show the images sent by Mr. Wicke to the (fictitious) adult. The fact that law enforcement elected to represent that they were a fictitious adult rather than a fictitious minor, as in *United States v. Quinn*, 257 Fed. App'x 864, 868 (6th Cir. 2007) attenuates the chain of distribution, making the fictitious adult the person distributing the images to the fictitious minors. Application here would justify application under any circumstance where a defendant distributes the offensive images to anyone who might show them to minors. The unambiguously applicable guideline

terms or the definition of "distribution to a minor" does not apply to a situation where there was no actual distribution to a real or fictitious minor.  The Court should not adopt the holding in *Love*, as it is contrary to Sixth Circuit precedent with regard to the role of the commentary. The enhancement should not apply to these facts.

**(2)**    U.S.S.G. § 2G2.1(b)(5)

Mr. Wicke withdraws this objection.

**(3)**    U.S.S.G. § 2G2.1(b)(5)

This enhancement clearly applies when a defendant occupies a position of trust over the victim.  It has never been applied to circumstances involving attempted enticement of fictitious minors over whom the defendant has never occupied a position of trust or authority. The government can cite to no authority for the proposition that this enhancement applies to a person who wishes to take a child into his care and control for the purposes of sexual exploitation.

In support of its position, the government cites to a case involving a defendant who owned a business "offering modeling courses, instruction, and photography services" and where the "children were often dropped off at Martin's studio and left in his custody for four to six hours per session" during which he produced child pornography in support of its argument here. See *United States v. Martin*, 291 F. App'x 765, 766 (6th Cir. 2008).  *Martin* clearly does not apply to the facts of this case, because the defendant had custody of the children during the commission of the offense.  None of the cases cited by the government involve application of this enhancement to facts such as this, where the defendant believes he may be engaging in the sexual exploitation of a (fictitious) minor sometime in the future.

7

The absence of support for this attenuated argument is glaring.  The fact pattern in evidence here, where a law enforcement officer poses as a minor or a parent of a minor, is so common that it was the subject of a nationally distributed television series.[3]  Yet the government cannot provide a single case where this enhancement was applied to circumstances that involved intended future conduct involving fictitious minors rather than established past relationships.  However distasteful the intended conduct here, the government has not, and cannot, sustain its burden of proving by a preponderance of the evidence that an enhancement designed to punish people in actual positions of authority should apply to people who get caught in internet sex stings attempting to engage in unlawful acts with what turn out to be fictitious children.  The enhancement should not apply.

        **(4)**     U.S.S.G. § 2G2.1(b)(5)

Mr. Wicke objects to the use of the pseudo-counts referenced in Counts 1 and 2.  This conduct does not fall under the definition of relevant conduct for the charged counts.  Mr. Wicke never transmitted the images of his granddaughter to anyone.  He did not use these images consistently with his other offense conduct.  At least one of these images does not meet the statutory definition of "child pornography" and the other image only tenuously so.  Mr. Wicke objects to the use of these images in a pseudo-count.

        **(b)**     **18 U.S.C. § 3553(a) factors**

                **(1)**     **Nature and circumstances of the offense and the history and characteristics of the defendant;**

---

[3] *To Catch a Predator*, https://en.wikipedia.org/wiki/To_Catch_a_Predator (last visited 9/4/2022).

The offense conduct is adequately set forth in the PSR and is not in dispute.  Mr. Wicke readily admitted his offense upon his arrest and confrontation with the evidence against him. He has not frivolously contested relevant conduct and accepts the wrongfulness of his actions. He is resigned to his fate, and the likelihood that he will spend the rest of his life in prison for what he did here.

**(2)    The need for the sentence imposed--**

**(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
**(B)    to afford adequate deterrence to criminal conduct;**
**(C)    to protect the public from further crimes of the defendant; and**
**(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

As noted above, whatever sentence this Honorable Court imposes likely means that Mr. Wicke will remain in prison for the rest of his life.  The available data on prison mortality clearly shows that those 55 and older have the highest mortality rates in prisons.  (See Attachment 1: Mortality in State and Federal Prisons - Prison Mortality Attachment, Tables 6 and 7).  Considering Mr. Wicke's status as a cancer survivor, the odds of his release from prison are extremely low, even if the Court imposes the lowest legally permissible sentence.

The result of this harsh probability is that whatever sentence the court imposes is likely to permanently incapacitate Mr. Wicke.  If he does survive to his release, he will be older, more infirm, and unlikely to be capable of reoffending.  A sentence of 10 years' imprisonment would achieve the purposes of sentencing, protect the public from future offenses, and provide adequate specific deterrence here.

Mr. Wicke will require medical attention while he is in the Bureau of Prisons.  He has

had recurring issues while in Newaygo County Jail and has received, at best, inconsistent care

for these issues.  To that end, Mr. Wicke requests that the Court recommend his placement in

a Federal Medical Center for a comprehensive health screening.

**(3)     The kinds of sentences available;**

The Court may sentence Mr. Wicke to a maximum sentence of life imprisonment.

(ECF No. 35, PSR, PageID.155).

**(4)     The kinds of sentence and the sentencing range established for the applicable category offense committed by the applicable category of defendant as set forth in the guidelines—;**

Mr. Wicke's recommended sentencing guidelines for count three, based on a total

offense level of 43 and criminal history category II, is life, and for counts four through seven

is 240 months as it is the statutorily authorized maximum sentence.  (ECF No. 35, PSR,

PageID.165-166).

**(5)     Pertinent policy statements issued by the Sentencing Commission;**

§ 5H1.1 - AGE (POLICY STATEMENT)

Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration. Physical condition, which may be related to age, is addressed at § 5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction).

10

In light of Mr. Wicke's relatively advanced age and health issues, his age is present "to an unusual degree" and sufficiently distinguishes this case from those typically covered by the guidelines.  Mr. Wicke urges the Court to impose a sentence that takes into account his age and health conditions.

§ 5H1.4 - PHYSICAL CONDITION, INCLUDING DRUG OR ALCOHOL DEPENDENCE OR ABUSE; GAMBLING ADDICTION (POLICY STATEMENT)

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

Mr. Wicke's health status and relative infirmity are sufficiently significant to warrant concern.  (ECF. No. 35, PSR, PageID.153).  A cancer diagnosis and diabetes are significant health problems for incarcerated individuals.  Any sentence imposed by this Court should instruct the Bureau of Prisons to house Mr. Wicke in a facility that can deal with his age and medical issues.

**(6)     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

None known.

**(7)     The need to provide restitution to any victims of the offense.**

Pursuant to 18 U.S.C. § 3663(a)(1)(A), restitution shall be ordered in this case.  The government has filed separate documents substantiating restitution orders.  The letters do not appear to make specific requests for restitution, and the government does not supply the Court

with the framework necessary for an accurate assessment of restitution in this case.  See

*Paroline v. United States*, 572 U.S. 434 (2014).  The minimum authorized by statute is

appropriate in a case such as this.  Mr. Wicke is not responsible for the creation of the images

at issue but is part of the ongoing harm caused by the market created by their continued

distribution.

## III.    Conclusion

Mr. Wicke is remorseful for his offense conduct and has done what he can to try to

make amends for the harm he has caused to his family by committing this offense and for his

past conduct.  He accepts responsibility for his actions.  He asks that the Court sentence him

to the lowest possible sentence that still achieves the purposes of sentencing as set forth in 18

U.S.C. § 3553(a).

Respectfully submitted,

SHARON A. TUREK
Federal Public Defender

Dated:  September 6, 2022                    /s/ James Stevenson Fisher
                                            JAMES STEVENSON FISHER
                                            Assistant Federal Public Defender
                                            50 Louis NW, Suite 300
                                            Grand Rapids, Michigan  49503
                                            (616) 742-7420